UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT N. JOHNSON,<br><br>            Plaintiff,<br><br>    v.<br><br>MAI LUU-TRUONG, et al.,<br><br>            Defendants. | No. 2:14-cv-1078-MCE-KJN<br><br><br>FINDINGS AND RECOMMENDATIONS |

Presently before the court is plaintiff Scott N. Johnson's ("plaintiff") motion for default judgment against defendants Mai Luu-Truong and Billy Truong (collectively "defendants"). (Mot. for Default J., ECF No. 10.) The court heard plaintiff's motion for default judgment on its law and motion calendar on September 18, 2014. Attorney Dennis Price appeared at the hearing on behalf of plaintiff. No appearance was made by or on behalf of defendants. For the reasons stated below, the court recommends that plaintiff's motion for default judgment be granted, that judgment be entered in plaintiff's favor, and that plaintiff be awarded the requested damages and injunctive relief.

////

////

////

////

1

I.     BACKGROUND

Plaintiff initiated this action on April 30, 2014, alleging violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq., California's Unruh Civil Rights Act, Cal. Civ. Code §§ 51 et seq., and California's Disabled Persons Act, Cal. Civ. Code §§ 54 et seq., and a claim for negligence. (See generally Compl., ECF No. 1.)

Plaintiff, who is affected by quadriplegia and uses a wheelchair and a specially configured van, alleges that defendants own, operate, manage, or lease an auto body shop named Advance Auto Body & Paint, which is located at 8130 Industrial Parkway, Sacramento, California. (Compl. ¶¶ 1-2.) Plaintiff alleges that defendants are liable for violations of the ADA, the Unruh Civil Rights Act, and the Disabled Persons Act, and for negligence because of architectural barriers to access at the business that plaintiff actually encountered, which consist of a lack of any handicap parking spaces, defendants' "pattern and practice of placing boxes and other items on the path of travel leading from the parking lot into the business office," which "restrict[s] the accessible path of travel to less than 36 inches in width," and door hardware at the business's entrance consisting of "a panel style handle that requires tight grasping or twisting of the wrist to operate." (Id. ¶¶ 9-11.) Plaintiff alleges that he first encountered these barriers when "[h]e went to the shop in December of 2013 and received an estimate for work." (Id. ¶ 12.) Plaintiff further alleges that he was again deterred by these barriers when "[h]e returned in January of 2014 to discuss his estimate." (Id.) Plaintiff alleges that he "experienced difficulty and discomfort" as a result of "encountering and dealing with the lack of . . . accessible facilities" at defendants' business. (Id. ¶ 13.) Finally, plaintiff alleges that defendants' failure to remove these barriers was intentional because the barriers were "intuitive and obvious" and "defendants exercised control and dominion over the conditions at this location" and "had the means and ability to make . . . change[s]" to these barriers. (Id. ¶ 14.) Plaintiff seeks injunctive relief, statutorily authorized money damages in an amount of $8,000 pursuant to the Unruh Civil Rights Act,[1] and $2,650 for

---

[1] Plaintiff notes in the complaint that he cannot simultaneously recover money damages under both the Unruh Civil Rights Act and the California Disabled Persons Act and that he will make an election as to which one of these two Acts he will pursue damages under "prior to or at trial." (Compl. at 7.) Plaintiff clarifies in his motion for default judgment that he seeks to obtain

2

1  the actual attorneys' fees and litigation costs that he has incurred in pursuing this action.  (Id. at 7-
2  8; Mot. for Default J. at 10.)
3        Affidavits of service filed by plaintiff reflect that on May 6, 2014, plaintiff, through a
4  process server, effectuated service of process on both Mai Luu-Truong and Billy Truong at the
5  address provided for Advance Auto Body & Paint.  Plaintiff's process server served both
6  defendants in person with the complaint, summons, and other documents.   (See Affs. of Serv.,
7  ECF Nos. 4, 5.)  On July 8, 2014, plaintiff requested that the Clerk of Court enter default against
8  both defendants.  (Reqs. for Entry of Default, ECF Nos. 6, 7.)  On July 10, 2014, the Clerk of
9  Court entered the default of both defendants.  (Clerks Certs. of Entry of Default, ECF Nos. 8, 9.)
10  In entering default, the Clerk of Court stated that it appeared from the record and papers on file in
11  the action that both defendants were duly served with process, but failed to appear, plead, or
12  answer plaintiff's complaint within the time allowed by law.  (See id.)
13        On July 21, 2014, plaintiff filed a motion for default judgment against defendants and
14  served a copy of the motion on both defendants by U.S. mail.  (Cert. of Serv., July 21, 2014, ECF
15  No. 10-13.)  A review of the court's docket reveals that neither defendant has appeared in this
16  action or filed a response to the motion for default judgment.
17        Plaintiff's motion for default judgment seeks statutory damages pursuant to the Unruh
18  Civil Rights Act in the amount of $8,000, which consists of minimum statutory damages of
19  $4,000 for each of two actual visits to the premises in question that resulted in discriminatory
20  events.  (See Mot. for Default J. at 6.)  Plaintiff also seeks injunctive relief in the form of readily
21  achievable property alterations that consist of providing the correct number and type of properly
22  configured disabled parking spaces and an accessible route to an accessible entrance, all in
23  accordance with the ADA and the Americans With Disabilities Act Accessibility Guidelines
24  contained in 28 CFR Part 36.  (See id. at 4-6.)   Plaintiff further seeks $2,650 is attorneys' fees
25  and costs that he has incurred in the prosecution of this case.  (See id. at 6.)
26  ////

---

28  monetary damages pursuant to only the Unruh Civil Rights Act.  Accordingly, the court will analyze plaintiff's claim for monetary damages only with respect to the Unruh Civil Rights Act.

## II.   LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). In addition, although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim."). A party's default conclusively establishes that

4

party's liability, but it does not establish the amount of damages.  Geddes, 559 F.2d at 560.

III.     DISCUSSION

      A.     Appropriateness of the Entry of Default Judgment Under the Eitel Factors

           1.     *Factor One: Possibility of Prejudice to Plaintiff*

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, plaintiff would potentially face prejudice if the court did not enter a default judgment.  Absent entry of a default judgment, plaintiff would be without another recourse for recovery.  Accordingly, the first Eitel factor favors the entry of a default judgment.

           2.     *Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint*

The court considers the merits of plaintiff's substantive claims and the sufficiency of the complaint together below because of the relatedness of the two inquiries.  The court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought.[2]  See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175.

           a.     *Americans with Disabilities Act*

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).  Discrimination includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." Id. § 12182(b)(2)(A)(iv); see also Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 945 (9th Cir. 2011) (en banc).  The ADA defines the term

---

[2] Plaintiff's motion seeks only default judgment with respect to his claims under the ADA and the Unruh Civil Rights Act.  Plaintiff does not seek judgment with respect to his claim under the California Disabled Persons Act or his negligence claim.  Accordingly, the court analyzes only the merits of plaintiff's claims under the ADA and the Unruh Civil Rights Act for purposes of this Eitel factor and for purposes of the relief sought by plaintiff through the present motion.

"readily achievable" as "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9).

"To prevail on a Title III discrimination claim, the plaintiff must show that (1) [he] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007). Furthermore, "[t]o succeed on a ADA claim of discrimination on account of one's disability due to an architectural barrier, the plaintiff must also prove that: (1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable." Parr v. L & L Drive-Inn Rest., 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000); accord Hubbard v. 7-Eleven, Inc., 433 F. Supp. 2d 1134, 1138 (S.D. Cal. 2006).

Here, plaintiff alleges: (1) that he is disabled (Compl. ¶ 1); (2) that defendants' auto body business, Advance Auto Body & Paint, is a place of public accommodation (id. ¶ 7); (3) that plaintiff was denied access to Advance Auto Body & Paint because of plaintiff's disability (id. ¶¶ 8-13); (4) that Advance Auto Body & Paint contains specified architectural barriers (id. ¶¶ 9-11); and (5) that these architectural barriers are "intuitive and obvious" and defendants "had the means and ability" to remove these barriers, thus indicating that their removal is readily achievable (id. ¶ 14). Because plaintiff's allegations are taken as true following the entry of default, the court concludes that plaintiff has met his burden to state a prima facie Title III discrimination claim.

b. *Unruh Civil Rights Act*

The Unruh Civil Rights Act provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). Generally, to prevail on his disability discrimination claim under the Unruh Civil Rights Act, plaintiff must establish that: (1) he was denied the full and equal accommodations, advantages, facilities, privileges, or services in a

business establishment; (2) his disability was a motivating factor for the denial; (3) the defendant denied plaintiff the full and equal accommodations, advantages, facilities, privileges, or services; and (4) the defendant's wrongful conduct caused plaintiff to suffer injury, damage, loss, or harm. See Cal. Civil Jury Instructions (BAJI), No. 7.92 (Spring 2011 ed.). As provided by statute, a violation of the ADA also constitutes a violation of the Unruh Civil Rights Act. Cal. Civ. Code § 51(f); see also Munson v. Del Taco, Inc., 46 Cal. 4th 661, 664 (2009).

Here, because plaintiff's complaint properly alleges a prima facie claim under the ADA, plaintiff has also properly set out the necessary elements for his Unruh Civil Rights Act claim. Accordingly, the second and third Eitel factors favor the entry of a default judgment.

3.     *Factor Four: The Sum of Money at Stake in the Action*

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). Here, plaintiff seeks a judgment of $10,650, including statutory damages, attorneys' fees, and litigation costs. Plaintiff seeks only the statutory minimum damages under the Unruh Civil Rights Act for two acts of discrimination, i.e., $8,000. Furthermore, plaintiff's request for $2,650 in attorneys' fees and litigation costs, consisting of $2,210 in attorneys' fees, and $440 in filing fees and service costs (see Decl. of Mark Potter, ECF No. 10-3, at ¶ 5), is permitted under both the ADA and the Unruh Civil Rights Act. See 42 U.S.C. § 12205; Cal. Civ. Code § 52(a). Plaintiff's requests for statutory damages, attorneys' fees, and litigation costs are tailored to defendants' specific wrongful conduct, and the statutes involved contemplate such awards. These damages and costs, plus any amount that would have to be spent to comply with an injunction, would be the entirety of defendants' liability should the court grant default judgment. Although not a form of monetary recovery, the injunction will undoubtedly require that defendants spend money to remove barriers at the location. However, as noted above, the ADA limits this liability to removal of barriers that is readily achievable, therefore placing a cap on defendants' liability.

////

////

Given the failure of either defendant to appear and defend, and thus their failure to show that they have complied with the ADA or the Unruh Civil Rights Act, the court finds that statutory damages, attorneys' fees, and an injunction are needed. Courts frequently grant default judgment in cases involving violations of the ADA and the Unruh Civil Rights Act and impose similar financial liabilities on the defendant. See, e.g., Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1016 (C.D. Cal. 2014) (awarding $12,000 in statutory damages, $1,320 in attorneys' fees, $419.20 in costs, and injunctive relief in connection with default judgment for violations of the ADA and the Unruh Civil Rights Act); Moore v. Cisneros, 2012 WL 6523017 (E.D. Cal. Dec. 13, 2012) (unpublished) (awarding statutory damages in the amount of $4,000, attorney's fees in the amount of $6,321, paralegal fees in the amount of $1,584.70, costs of suit in the amount of $1,314.00; and declaratory relief in connection with default judgment for violations of the two Acts). Given these circumstances, the court concludes that this factor favors the entry of a default judgment.

        4.    *Factor Five: The Possibility of a Dispute Concerning Material Facts*

The facts of this case are relatively straightforward, and plaintiff has provided the court with well-pleaded allegations and documentation supporting his claims. Here, the court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177. Defendants have failed to appear at any point in this case, including at the hearing on plaintiff's motion for default judgment, and have therefore admitted all material facts alleged in plaintiff's complaint. Since plaintiff's factual allegations are presumed true and defendants have failed to oppose the motion, no factual disputes exist that would preclude the entry of default judgment. Accordingly, the court concludes that the fifth factor favors a default judgment against defendants.

////

        5.    *Factor Six: Whether the Default Was Due to Excusable Neglect*

Upon review of the record before the court, the court finds that the default was not the result of excusable neglect. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Defendants have had ample notice of this lawsuit. The record reflects that plaintiff properly served both defendants with process and also served both defendants by mail with the motion for default judgment. Despite ample notice of this lawsuit and plaintiff's intention to move for the entry of a default judgment, defendants have not appeared in this action to date and have done nothing to defend themselves. Thus, the record suggests that defendants have chosen not to defend themselves in this action, and not that the default resulted from any excusable neglect. Accordingly, this Eitel factor favors the entry of a default judgment.

        6.    *Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits*

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010); ACS Recovery Servs., Inc. v. Kaplan, 2010 WL 144816, at *7 (N.D. Cal. Jan. 11, 2010) (unpublished); Hartung v. J.D. Byrider, Inc., 2009 WL 1876690, at *5 (E.D. Cal. June 26, 2009) (unpublished). Accordingly, although the court is cognizant of the policy in favor of decisions on the merits—and consistent with existing policy would prefer that this case be resolved on the merits—that policy does not, by itself, preclude the entry of default judgment.

Upon consideration of the Eitel factors, the court concludes that plaintiff is entitled to the entry of default judgment against defendants, both individually and doing business as Advance Auto Body & Paint, and recommends that such a default judgment be entered. All that remains is the determination of the relief to which plaintiff is entitled.

////

////

B.     *Terms of the Judgment to Be Entered*

      1.     *Statutory Damages and Injunctive Relief*

After determining that a party is entitled to entry of default judgment, the court must determine the terms of the judgment to be entered. Considering plaintiff's briefing and the record in this case, the court concludes that plaintiff is entitled to the requested award of statutory damages in the amount of $8,000. The Unruh Civil Rights Act provides for, among other things, a minimum statutory damage amount of $4,000 per violation. Cal. Civ. Code § 52(a). Plaintiff seeks $8,000 in damages for violation of the Unruh Civil Rights Act based on two actual visits to Advance Auto Body & Paint. (Mot. for Default J. at 6.) The court recommends that plaintiff be awarded those statutory damages. In addition, because plaintiff satisfactorily alleged his ADA claim, the court recommends that the plaintiff be granted injunctive relief, as described below, to remedy the identified architectural barriers to the extent the remediation is readily achievable.

      2.     *Attorneys' Fees and Litigation Expenses*

Plaintiff also requests that the court award him $2,650 in attorneys' fees and costs that he has incurred in connection with prosecuting this case. (Decl. of Mark Potter, ECF No. 10-3, at ¶ 5.) In support of this request, plaintiff has filed a declaration by his counsel, Mark Potter, as an exhibit to his motion for default judgment. (See id.) Potter states in his declaration that plaintiff's attorneys have spent 5.2 hours of time working on this case at an hourly billing rate of $425, totaling $2,210 in attorneys' fees. (Id. ¶¶ 5, 7.) He further declares that plaintiff's attorneys have done the following in connection with this case:

> (1) had an initial meeting with the Plaintiff at which intake notes were drafted, a retainer agreement was discussed and executed; (2) had an onsite inspection made of the real property, which is the subject matter of this suit, including photographs; (3) conducted research of public records to determine the identities of the business owner and owner of the real property; (4) drafted the Summons, Complaint and required front matter, filed the Complaint, had the Summons and Complaint served by our attorney service and paid all service costs; (5) prepared Request for Entry of Default by Clerk of Defendant; (6) and drafted the application for default judgment and supporting declarations.

(Id. ¶ 4.) Potter further declares that plaintiff also "paid out $440.00 in filing fees and service costs, for a total of $2,650.00 in attorney fees and costs" associated with this case. (Id. at ¶ 5.)

10

Plaintiff also attaches orders from other cases awarding attorneys' fees in connection with default judgments on claims under the ADA and Unruh Civil Rights Act similar to the ones alleged in this case that indicate that the going hourly rate for attorneys' fees in such a case is $425.[3]  (See ECF Nos. 10-8, 10-9, 10-10, 10-11, 10-12.)

Both the ADA and the Unruh Civil Rights Act authorize a prevailing plaintiff to recover reasonable attorneys' fees, expenses, and costs.  42 U.S.C. § 12205; Cal. Civ. Code § 52(a). Attorney's fee awards are calculated using the lodestar method whereby the hours reasonably spent in the litigation are multiplied by a reasonable hourly rate.  Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1146-48 (9th Cir. 2001); see also Moore, WL 6523017, at *4.  The Ninth Circuit Court of Appeals has explained the lodestar approach as follows:

> The lodestar/multiplier approach has two parts. First a court determines the "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. See D'Emanuele [v. Montgomery Ward & Co., Inc., 904 F.2d 13 79, 1383 (9th Cir.1990) ]; Hensley [v. Eckerhart, 461 U.S. 424,] 461 (1983).  The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed. See Hensley, 461 U.S. at 433. A district court should exclude from the lodestar amount hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary." Id. at 434.  Second, a court may adjust the lodestar upward or downward using a "multiplier" based on factors not subsumed in the initial calculation of the lodestar. [footnote omitted] See Blum v. Stenson, 465 U.S. 886, 898-901 (1984) (reversing upward multiplier based on factors subsumed in the lodestar determination); Hensley, 461 U.S. at 434 n. 9 (noting that courts may look at "results obtained" and other factors but should consider that many of these factors are subsumed in the lodestar calculation).  The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in "'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts" that the lodestar amount is unreasonably low or unreasonably high.  See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986) (quoting Blum, 465 U.S. at 898-901); Blum, 465 U.S. at 897; D'Emanuele, 904 F.2d at 1384, 1386; Cunningham v. County of Los Angeles, 879 F.2d 481, 487 (9th Cir.1989).

---

[3] Potter further declares that $425 is his hourly "billing rate for ADA related work" and that this rate "is a fair rate for attorneys with similar experience and expertise" working in this area of the law.  (Decl. of Mark Potter, ECF No. 10-3, at ¶ 7.)  While the undersigned is concerned that counsel's billing rate is above the prevailing Sacramento rates, the undersigned is cognizant that counsel has sought to keep the total fees low, and therefore concludes that the amount sought is reasonable.

1  Van Gerwin v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000).  Generally,

2  "[u]nder the Lodestar method, Plaintiff's attorneys are entitled to be compensated for all hours

3  reasonably spent on the matter. . . . An attorney's sworn testimony that, in fact, it took the time

4  claimed . . . is evidence of considerable weight on the issue of the time required . . ." to complete

5  a matter.  Blackwell v. Foley, 724 F. Supp. 2d 1068, 1081 (N.D. Cal. 2010) (citations and

6  quotation marks omitted).  Furthermore, section 12205 of the ADA authorizes a district court, in

7  its discretion, to allow the prevailing party to obtain litigation expenses and costs. 42 U.S.C. §

8  12205

9       Here, plaintiff seeks an award of $2,210 for a total of 5.2 hours of billable time his

10 attorney spent on this case.  Based on the representations made in plaintiff's counsel's sworn

11 declaration, plaintiffs other exhibits indicating that a reasonable hourly rate for a case such as this

12 is $425, and the limited number of billable hours sought to be recompensed through plaintiff's

13 request, the court concludes that plaintiff's request for attorneys' fees is reasonable.  Furthermore,

14 the $440 requested for filing fees and service costs is reasonable.  Accordingly, the court

15 recommends that plaintiff be awarded the full $2,650 requested for these expenses.

16 III.    CONCLUSION

17      For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

18      1.    Plaintiff's motion for default judgment (ECF No. 10) be granted.

19      2.    Judgment be entered in plaintiff's favor and against the following defendants: Mai

20 Luu-Truong and Billy Truong, both individually and doing business as Advance Auto Body &

21 Paint.

22      3.    Plaintiff be awarded $10,650, consisting of statutory damages in the amount of

23 $8,000.00, attorneys' fees in the amount of $2,210.00, and other litigation expenses in the amount

24 of $440.00.

25      4.    Plaintiff be granted an injunction requiring defendants to provide readily

26 achievable property alterations that consist of the correct number and type of properly configured

27 disabled parking spaces and an accessible route to an accessible entrance, all in accordance with

28 the Americans With Disabilities Act of 1990 and the Americans With Disabilities Act

Accessibility Guidelines contained in 28 CFR Part 36.

      5.      The Clerk of Court be directed to close this case.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after these findings and recommendations are filed, any party may file written objections with the court. A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order.  See <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  September 19, 2014

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE